Good morning. May it please the Court, my name is Lisa Pickering and I'm the attorney for the petitioner, Mr. Joseph Kamel. I'd request to reserve two minutes of my time for rebuttal. This case is before the Court because the Board erroneously overturned the IJ's grant of deferral of removal under the Convention Against Torture. The Board substituted their findings of fact and conclusion of— Slow down, Ms. Pickering. Sorry. I know. For that of the immigration judge, where credibility is not at issue. Substantial evidence in the record supports the immigration judge's grant of deferral of removal. The BIA erred in ruling that the petitioner would not be subject to torture if he was removed to Egypt on account of his proselytizing and ministry here in the United States. The Board disregarded evidence in the record, gave improper weight to evidence, cherry-picked facts, and misstated evidence in order to reach the conclusion that Mr. Kamel would not be tortured. The overwhelming weight of evidence in the form of testimony of the petitioner, his family, and the expert, Dr. Paul Marshall, and the State Department and other agency reports indicate Mr. Kamel would be considered a proselytizer and subject to torture both by the government of Egypt and— Are we to decide this case by our review of what the overwhelming weight of the evidence is? I think the standard of review is substantial evidence. There is substantial evidence to sustain the IJ's finding. Yes. Right. That's what the BIA should have done. Yes. So what the overwhelming evidence is, is rhetorical but not required for us to consider. I think that your review of the – it should be of the BIA's decision and whether that is supported by the weight of the evidence. By the weight of the evidence? By substantial evidence. By substantial evidence, right. No. So we don't weigh the evidence. I mean, because there's a lot of evidence here that Mr. Kamel, A, he's never been tortured. B, his father has been a member of the Church for years, and his father is living quietly in Egypt and hasn't been tortured. C, he hasn't given a broadcast for the last five years. And when – there's very little evidence of any that his – he was identified in the broadcast as by name. So there's a lot of evidence here that points towards the probability of him not being tortured if he goes back to Egypt. But that's not the evidence that Mr. Kamel put in. He put in evidence by himself and his brother that they – to which credibility was granted, as well as Dr. Marshall, to whom credibility was granted. That's what you have to rely upon, right? I would like to address the issue of the passage of time and also his father's treatment. Okay. Before you get there, my understanding is that the function of the board is not to do any fact-finding itself, and if it's going to upset the I.J., it's got to be because the I.J.'s findings are clearly erroneous. Now, do you agree with that? Yes, Your Honor. Regarding the passage of time argument, the board erred in ruling that Mr. Kamel was unlikely to face torture because it had been more than five years since he participated in broadcasts. They ignored the fact that the broadcasts were made into tapes, made into CDs, and distributed throughout Egypt. That's at the record at 186, 202, and 742. Petitioner's name was also listed in the credits. In the modern age, nothing that is recorded ever disappears. Each CD can be listened to by thousands of people years later, inciting hatred and leading to the petitioner being targeted. In Dr. Marshall's report, he references an incident where 5,000 people rioted after the discovery of a play that was performed more than two years before at St. George's Church in Alexandria, which purportedly insulted Islam, at record at 348. So the fact that it has been a while since he participated in the broadcasts is – should not be given weight because they were recorded. Well, I return to the question I asked you. I don't think we're in the business of giving weight, and I don't think that the BIA is in the business of giving weight. The question is, is there substantial evidence to sustain the IJ's finding? I think there is substantial evidence because he – his name is listed in the credits and they were recorded. So the recordings still exist, can still be listened to by Islamic extremists in Egypt. Regarding his father's position in Egypt, his father's case can be – his father's position can be distinguished from Mr. Kamel because the testimony showed his father did not proselytize like his children and he is not similarly situated. His activities were within the church. He was not evangelical. He was not performing any ministries. He was not performing a radio program. This is in the record at 189. The Board's reliance on a matter of AEM is misplaced. What's the standard under – I take it the claim we're talking about here is the deferral under CAT.  What's the standard? What has to be proven to persuade the immigration judge that the relief that was granted is something the Petitioner's entitled to? More likely than not that he would face torture. What is it in the evidence that – and that's a pretty tough standard. What would you point to in the evidence that would support that proposition? I would refer to Dr. Marshall's report. I would refer to the State Department report, which says that the State security police treats incidents of proselytizing as inciting sectarian strife under Section 98F and that the State Department report clearly states that people accused of proselytizing in Egypt are turned over to State security and State security is well-known and well-documented to use torture. Did any of the evidence, and I realize the published reports wouldn't likely – I guess it's Dr. Marshall's evidence that I'm most interested in. Did he refer to or provide support that spoke to the more likely-than-not standard? His testimony and his reports indicate that he said a very strong likelihood. I believe his exact quote was a – that this Petitioner and his family were characterized as overactive Christians, evangelical, and much more likely to suffer persecution than the average Coptic family in Egypt. That's at 159 and 160. He says that with the Egyptian authorities, again, particularly around matters of proselytism and conversion, torture is frequent, torture is endemic, which I had to look up. Yes. He said pervasive as well. Prevalent and restricted to a particular nation, and pervasive by the security authorities in Egypt. But I'm thinking back to my trial practice, and when we had an expert testify as to probabilities, he had to say the magic words. It's more likely than not that this condition will eventuate. Where in the record is Dr. Marshall stating it is more likely than not that Kamel, if he goes back to Egypt, will be tortured? Page 164 and 160. 164. He says, I'm not sure of a definition of torture, but someone could be threatened or beaten. Is that what you mean? I'd have to get my record, Your Honor. And he says, the chance of them being tortured is, here's where, 166, colon 6. Someone is detained in Egypt on a religion-related matter. The chance of them being tortured is very high. Is that what you mean, as far as more likely than not? Yes, Your Honor. And then at 167, he says, so I believe he would certainly face harassment from the government, and there's a good likelihood he would face worse than that. But ultimately, it's the immigration judge's decision. The expert can testify as to his opinion, but he's not the trier of fact, and he's not the expert. No, but he has to – you see what I'm concerned with? He has to say the magic words. It's more likely than not. It's more probable that he will be tortured. He sort of dances around the issue. Perhaps that's a function of imprecise interrogation. Or being an academic and not a lawyer ready to create. It sounds pretty much like an expert witness who's testified before. He is an expert on Egypt, Your Honor. I'd also like to point out that the – I'm sorry. I've reserved my time for rebuttal. Go ahead and make your point, and we'll give you your rebuttal. Thank you, Your Honor. The Board's decision stating that the Respondent would be – or the Petitioner would be able to avail himself of the local authorities while in Egypt, citing the attack on his sister Naveen as evidence that the police intervened is gross mischaracterization of the evidence. The Board completely misstates the record. His sister Naveen's application for asylum was included in the record. His sister was attacked in the street by Muslim fundamentalists who ripped off her clothes and tore at her naked body. This is at 728. Police officers did break up the attack, but failed to make a report or do any sort of investigation. And then two weeks later, she was called in to the police station and then turned over to State security as a result of this incident. The State security held her without charges, stripped her naked, and threatened her with rape. This is at 729. This incident is a central claim for her being granted asylum by the service. So for the Board to say that this means the police are willing to intervene on behalf of Mr. Kamel is a gross mischaracterization of the evidence. A reasonable factfinder would be compelled to reach an opposite conclusion. Substantial evidence in the record compels a finding that government and police of Egypt are unwilling to protect the Petitioner and his family. Okay. Thank you for the argument. We will hear from the Attorney General. May it please the Court. My name is Edith Yacon, and I represent the Respondent, Attorney General of the United States. This Court should deny the petition for review. As substantial evidence supports the Board's conclusion, the Petitioner failed to carry his burden in demonstrating that it is more likely than not that he would face torture by or at the instigation or with the consent or acquiescence, including willful blindness, of the Egyptian government. Pardon me. Is that a legal question or is it a factual question, the burden of proof of establishing probability of torture? The Board explained in their decision by citing the matter of V.K. that the I.J.'s prediction or finding regarding the likelihood of a probability that an alien will be tortured relates to the ultimate statutory requirement for establishing eligibility for removal, for relief from removal. It's therefore, according to matter of V.K., which is 24 INN decision 500, a mixed question of fact or a question of judgment. According to the regulations, which relate to the Board's jurisdiction, the Board will not find facts. However, the Board does have de novo review over questions of judgment. And as stated in matter of V.K., this question is a question of judgment. As such, the Board of the Court of Appeals has not found facts. But what's the judgment? What's the legal question? Because the standard actually is unusually precise, more likely than not, more than 50 percent probable. So I'm not sure I understand what the legal judgment is. That's correct. The Board explained that it's a mixed question of law and fact because they must consider the facts that have been presented by the Petitioner and apply that to the law, which is more likely than not. And so by applying this law to fact. So what's the mixed question of law that's involved? It sounds like it's all fact. We have this problem a lot in lots of issues. Is a confession voluntary? What's it mean to be voluntary mixes with the facts of the case? But when you have a standard that's as precise as more likely than not, 51 percent, I'm not sure that I understand how there is a question of law involved. That's correct. Well, the first thing I would note in this case is that Petitioner does not bring up this issue in the opening brief. As such, the government argues that Petitioner has waived a challenge to the application of matter of V.K. to the immigration judge's decision by the Board in this case. As such, the issue is not before this Court. But I'd be happy to address the question if you'd so like, Your Honor. We'd so like. Please do. Sure. Sure. What do you think that the issues that are before us are? What do you think those issues are? I'm sorry. Can you repeat the question? The issues that were before? That were before the BIA and that have been brought to us. What are they? The question that this Court must decide is whether substantial evidence supports the Board's decision. In other words, this Court should only grant the petition for review if the Court finds that the record compels the conclusion that Petitioner carried his burden in demonstrating that it's more likely than not that he'll be tortured if returned to Egypt. Now, the BIA stated that we're going to look at this de novo. And it appeared to me that it made itself several findings of fact. That would not be the government position. The government position is that the Board did not find fact, but instead applied de novo review to consider all the evidence, the uncontroverted facts that were already in the record. They cite two evidence which was not questioned by either side, and rather reached their own conclusion with respect to the likelihood of torture pursuant to matter of V.K., which is their interpretation of the regulations which this Court, according to the government, should grant deference to under Chevron. Which wheels us back to the question of, okay, exactly what is it that's a question of law here that gives us reason to defer to matter of V.K.? Well, matter of V.K. speaks of question of judgment. And the Board's regulations under 1003.1b3 says that the Board has appellate jurisdiction over decisions of the I.J. And then in 1003.1d32, it says that the Board may review questions of law, discretion and judgment de novo. In other words, there's a distinction made in the regulation between a pure question of law, a question that relates to discretion, and one which is a question of judgment. And the Board, pursuant to matter of V.K., found that this was a question of judgment. So there are three categories which can be considered de novo under the regulations in 1003.1d32. Does judgment mean something other than mixed law and fact? I mean, we're called judges. Judgment is inherent in any kind of determination, be it fact or law. If you're suggesting to me that judgment here in the regulations is meant to encompass pure decisions as to fact, is that the position? That's not the position, Your Honor. I'm not sure what the Board would say about that question. And, of course, the agency should be given the opportunity to answer that question in the first instance. Mr. Cohen, let me ask you this. Do you see a difference between a review of a historical fact, at what time did a person enter the country, right, and the review of a predictive fact? Will he be tortured? Is there a difference as to the scope of review of the BIA as to a historical fact found by the IJ and as to a predictive fact? In this particular case, because Petitioner's claim was not based on historical fact and was based only on his fear of future persecution, it was a speculation whether he would be tortured in the future in Egypt. As such, Petitioner presented evidence of expert and was placed on the stand himself to testify about his own fear. And so there were no historical facts to question in this case. Let me ask you this. Is the Board of Immigration Appeal not required simply to determine whether a reasonable trier of fact could, on the evidence presented before the IJ, determine a predictive fact as to whether torture would eventuate? Is that the only ---- That's not the agency's interpretation of the regulations which provide the questions of judgment are reviewed de novo. And as mentioned before, Petitioner did not bring up that issue in his opening brief. And the government continues to maintain that deference should be owed to the decision of matter of V.K. pursuant to Chevron. Is it the Board's interpretation of ---- In a common law case, the judge would simply be put the question in deciding whether to submit the case to a jury, whether there was sufficient evidence from which reasonable jurors could find that, let's say in a negligence case, that the defendant more likely than not violated the rules of negligence and proximately caused damage to the plaintiff. Isn't that all we're called upon here to do? Or is there a different standard as to what probability means in the immigration field than what it means in common law? As you know, Your Honor, through so many immigration cases that you've heard, immigration is such a complicated area of law. And of course, it's an administrative area of law as well. And so the regulations do dictate some of the procedures that we're operating under in this case. And you'll forgive me for returning to the same point. I hate to harp on it. And I'm sorry if I'm not responding to your question. Please let me know if I can further clarify. But the government's position is that Manner of V.K. does dictate the result in this case. And has V.K. been ratified by any circuit court opinions? As far as I understand, the Ninth Circuit has not dealt with Manner of V.K. I do recall that the Second has, but you'll forgive me, Your Honor, I can't tell you that as a matter of fact at this moment. Has anybody found that V.K. is an improper interpretation of the regulations and the statutes? As far as I understand, no. So your position is under V.K. the determination of what's more probable than not is not necessarily a factual issue, as it would be a common law, but under the regulations as a matter of judgment, and the regulations say matters of judgment are reviewed de novo. Basically, Your Honor, I would simply reassert what Manner of V.K. says, particularly and directly and exactly, just so that I'm clear. V.K. says that the Board reviews de novo I.J.'s predictions or findings regarding the likelihood that an alien will be tortured because it relates to whether the ultimate statutory requirement for establishing eligibility for relief from removal has been met and is therefore a mixed question of law and fact or a question of judgment. Those are the words of Manner of V.K. If this Court reached the issue of V.K. finding no waiver of the issue and the Court found that there was an improper finding of fact, the regulations do not allow the Board to find fact such that there would be criticism that would be. Thank you. Sure. In sum, substantial evidence supports the Board's determination that Mr. Kamel failed to establish eligibility for protection under the Convention against Torture, whereas fear that he will be tortured in Egypt is speculative and where he failed to demonstrate that any torture would be inflicted by, at the consent or acquiescence of the Egyptian government. Consequently, this Court should deny the petition for review. Thank you very much, Your Honors. We thank you. And now invite Ms. Pickering for a brief rebuttal. Ms. Pickering, and this is not from your time, so we'll give you this time over. Oh, thank you. How do you see the view of the government regarding V.K. as to a predictive fact? Do you think V.K. is good law? Is it good law, number one? Is it a good reading of the regulations and statutes? And two, if it's not good law, why is it not good law? I'm troubled by their decision in matter of V.K. because I have a hard time understanding why they think that this Convention against Torture is a question of judgment as opposed to all other decisions that the immigration judge makes that are not considered to be judgment and that are not reviewed de novo. Their argument seems to be we have de novo review because we have de novo review. Well, do you see the difference between a historical fact and a predictive fact? I do, but there's many cases in which the immigration judge has to make mixed questions of law and fact where the Board does not exercise de novo review. So I'm unclear on their reasoning of why they think in this particular case they get de novo review and other cases they don't get de novo review. What do you have in mind as a predictive fact where they don't get de novo review? I think in discretionary waivers, which is 212C, cancellation for lawful permanent residence, where you apply the law or, you know, apply facts to the law, they don't necessarily always use de novo review. They look at compelling evidence. You mean on cancellation of removal as to whether it will be an extreme hardship to the children of a person about to be removed? Or for 212C waivers when it's the cancellation of removal. That's a predictive fact, isn't it? Yes. And is there de novo review of that? I don't believe that there is de novo review of that. Now, is there something affirmatively you want to tell us? I'm just making concluding remarks that the Board of Immigration Appeals erred in overturning the immigration judge's decision. They cherry-picked facts while disregarding the overwhelming weight of the evidence which shows is more likely than not the Petitioner would be tortured if returned to Egypt. Petitioner is highly likely to face torture at the hands of Muslim extremists and the State Security Police. They erred in relying on the Egyptian government's merely symbolic overtures to the Coptic Christians, while disregarding the credible testimony of all witnesses and the voluminous evidentiary record verifying both the government's pervasive use of torture and their acquiescence to torture at the hands of extremists. Ms. Pickering, if we grant your relief, will it not be the fact that every Coptic No, I don't think so. I think that in the Board they relied on the cases of Mansour and Galey, which talked about disfavored group analysis of the Coptic Christians. In those cases, nothing particular happened to either the Petitioner or the Petitioner's family. In this case, Dr. Marshall reviewed the record and said that specific things had happened to them. Proselytizing is considered a very serious offense in Egypt. This Petitioner would be considered a proselytizer. He is separating himself from the average Coptic disfavored person in Egypt and bringing himself to the attention of both the extremists and the government. I got you. We thank you for the argument. Thank both counsel for their assistance and helpful arguments. The case just argued is submitted and we are adjourned. All rise.
judges: Fletcher B. , Clifton, Bea